# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

NADINE GUTHRIE, as Legal Guardian
and Grandmother of minor child, MH,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:10-cv-858

Spiegel, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Nadine Guthrie filed this Social Security appeal in order to challenge the Defendant's finding that her minor granddaughter, MH,[1] is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

In September of 2006, Plaintiff filed an application for Supplemental Security Income (SSI) on MH's behalf, alleging a disability due to asthma and learning and behavioral problems, primarily attention deficit hyperactivity disorder ("ADHD")(Tr. 81-83, 107).

---

[1] Plaintiff's counsel originally filed suit in the name of the minor herein described as "MH." On July 11, 2011, Plaintiff filed an unopposed motion to substitute the name of the legal guardian and grandmother of MH, Nadine Guthrie, in place of the inadvertently named minor child.

Plaintiff alleged an onset date of June 19, 1999. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On May 22, 2009, an evidentiary hearing was held, at which Plaintiff appeared, represented by counsel, and gave testimony. On July 29, 2009, the ALJ denied Plaintiff's SSI application in a written decision. (Tr. 7-23).

Not surprisingly given that she was just ten years old on the date of the decision, the ALJ determined that MH had never engaged in substantial gainful activity. Although the ALJ determined that MH has the severe impairments of a learning disorder NOS, ADHD, and asthma, he concluded that none of those impairments, alone or in combination, met or medically equaled a Listed Impairment that would entitle MH to a presumption of disability. In concluding that MH's impairment did not functionally equal any Listing, the ALJ found that MH functionally experiences "less than marked" limitations in acquiring and using information, in attending and completing tasks, in interacting and relating with others, and in moving about and manipulating objects. (Tr. 16-20). The ALJ further determined that MH has no limitation at all in her ability to care for herself, (Tr. 21-22), and "less than marked" limitations in her health and physical well-being. (Tr. 22-23). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 24).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff presents a single claim of error, arguing that the ALJ erred by failing to find that MH met or equaled the Listed impairment for ADHD.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924.

The sole focus of Plaintiff's appeal to this Court is Step 3 of the ALJ's analysis; specifically, his conclusion that MH does not meet or equal the Listing for ADHD set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant's impairment can equal a Listing medically, or can equal a Listing functionally. I conclude that the ALJ's conclusion that Plaintiff does not meet or equal the referenced Listing must be affirmed as within the acceptable "zone of choice," because it is amply supported by substantial evidence in the record.

### B. Substantial Evidence Analysis

In this case, Plaintiff argues chiefly that MH met or equaled the ADHD Listing. However, Plaintiff's arguments are construed in the alternative as suggesting that MH's level of impairment was functionally equivalent to the ADHD Listing.

### 1. Evidence That MH Meets or Equals The ADHD Listing

Plaintiff first argues that MH suffers from an impairment that meets or equals the ADHD Listing. To meet the ADHD Listing, a claimant must satisfy both Parts A and B in the listed criteria. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 §112.11. Part A requires that the child have a "marked" level of developmentally inappropriate severity in attention, impulsiveness, and hyperactivity. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 §112.11A. The pertinent regulation defines a "marked limitation" as one that "interferes seriously" with the ability to independently initiate, sustain, or complete activities. The regulations explain that a "marked" limitation is one that is "more than moderate" but "less than extreme," and provide lengthy additional descriptions for that category of limitation. *See* 20 C.F.R.

§416.926a(e). Part B of the ADHD Listing additionally requires the child to be impaired in at least two of the following domains: age-appropriate cognitive/communicative functioning; age-appropriate social functioning, age-appropriate personal functioning, or difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 §112.11B (incorporating criteria in 20 C.F.R. Part 404, Subpt. P, App. 1 §112.02B2).

Plaintiff alleges that MH had "marked" impairments in attention, impulsiveness, and hyperactivity under Part A, as well as impairments in cognitive and social functioning, personal functioning, and in concentration, persistence, or pace under Part B. Plaintiff relies upon school records, the evaluative report of consulting examiner Dr. Fritsch, and Plaintiff's own testimony to support her arguments.

None of the referenced evidence amounts to substantial evidence that MH's limitations were "marked" in the areas of attention, impulsiveness, and hyperactivity. No medical source has categorized MH's limitations as "marked" in those three areas, and no examining or treating source, or non-examining consultant has ever opined that MH met or equaled the Social Security Listing. Countervailing evidence discussed by the ALJ, including school records, medical opinions, and some of Plaintiff's own testimony and statements, supports the ALJ's determination that MH's impairments were "less than marked" in the areas of attention, impulsiveness and hyperactivity, particularly after MH began treatment for her ADHD. Furthermore, the fact that substantial evidence may exist to support a contrary conclusion does not mean that this Court must reverse. So long as substantial evidence exists to support the Commissioner's decision, as it does in this case, this Court must affirm.

One of the primary records on which Plaintiff relies is a first grade "screening"

assessment performed by a school psychologist to determine MH's needs in the academic setting. (Tr. 85). That assessment - made prior to MH's formal diagnosis or any treatment for ADHD - reflects two separate fifteen-minute periods of classroom observation conducted as part of the screening. In the first observation period, MH was observed to be on-task approximately 79% of the time as compared to her peer's on-task performance of 86%. (Tr. 86 ). During a second equally brief observation period, MH was on-task only 39% of the time compared to a peer observed to be on-task approximately 90% of the time. (Tr. 86). In connection with the screening assessment, Conners' Rating Scales were completed by both MH's teacher and by Plaintiff. In both, MH's scores were "clinically significant" for hyperactivity and attention problems. (Tr. 88-89). Based upon the observations and the behavior checklists completed by the teacher and Plaintiff, the school psychologist concluded that MH fell in the "at-risk" range for an attention disorder, and may warrant further evaluation. (Tr. 92).

Plaintiff cherry-picks scores from this initial "screening" diagnostic report to support her position, focusing most on the second 15-minute observational period in which MH was on-task just 39% of the time. Overall, however, the report does not support remand. Rather, it is clear that the report was merely a screening tool that concluded that MH was at-risk, and suggested the need for further diagnosis and treatment.

Plaintiff also heavily relies upon MH's first grade report card, which reflects her teacher's comment that MH is "really struggling to stay focused" and had assistance from a paraprofessional for part of the morning to help her complete tasks (Tr. 98-100). However, the same report reflects that MH either "meets standards" or "successfully meets current grade level standards independently most of the time" in the vast majority of graded

6

areas. (*Id.*). Even leaving aside the fact that MH apparently did not begin treatment for ADHD until near or just after completion of the first grade, the first grade report card does not support a finding that MH had sufficiently "marked" limitations in attention, impulsiveness, and hyperactivity to satisfy Part A, or additional limitations required to meet or equal Part B of the ADHD Listing.

Plaintiff points to other school evidence in an effort to show that MH's limitations satisfy at least two of the Part B areas of the ADHD Listing: cognitive and social functioning, and concentration, persistence or pace. Specifically, Plaintiff notes a 2009 evaluative report that states that MH's reading scores fell approximately 2 years below grade level, and evidence that MH had an Individualized Education Plan ("IEP") that entitled her to special accommodations in school)(Tr. 88, 142, 176). The same report states that MH does not have age-appropriate functioning in the area of concentration, persistence or pace.

Again, however, Plaintiff's evidence is insufficient to demonstrate that the ALJ's determination that MH did not meet or equal the Listing was error. The fact that MH had an IEP based upon a learning disability is not the same as proving that MH met or equaled the requisite Listing; many children have IEPs without meeting the severity required for a Listed impairment. The 2009 report that suggested that MH's reading level was one or two grade levels below her grade level does not itself satisfy the Part B criteria for the Listing; the report is silent as to what testing instrument was used, or how the assessment was made. (Tr. 176). In fact, the same report contains evidence that MH's ADHD was not sufficiently severe to meet or equal the Listing. For example, the report notes MH as having "age appropriate" behaviors and no significant impairment in the areas of

communicative functioning and motor/physical functioning. (Tr. 178-179). The 2009 report's conclusions mirror the conclusions drawn in a separate evaluation performed two years earlier, in 2007 (second grade), which stated that MH had "age-appropriate" communication functioning, motor/physical functioning and personal functioning scores. (Tr. 167-170). Although the later 2009 report suggests that MH experiences some impairment in social skills, that report still concluded that her social functioning overall is "age appropriate." (Tr. 180). The 2009 report reflects some impairments in the areas of cognitive functioning and in concentration, persistence or pace, but even there, the degree of impairment is generally reported in the middle range of severity, or a "3" on a 5-point scale in which a "1" reflects "not a problem" and 5 reflects a "very serious detriment to academic or social success." (Tr. 176, 181). Overall the, MH's school records, including 2007 and 2009 evaluations, support the ALJ's determination that MH did not meet or equal the ADHD Listing because the degree of her impairment did not satisfy all criteria required by both Parts A and B of the Listing.

Other school documents add to the body of evidence that supports the ALJ's conclusion that MH did not meet or equal the ADHD Listing. In second grade, MH's writing fluency was assessed as "just below average for her grade level," with math skills that fell "in the low average range." (Tr. 170). Although the same evaluation showed that MH struggled in the area of reading, her total scores were deemed to be in the "average range," despite a conclusion that she met the criteria for a "Minor" health impairment based upon her "attention deficit disorder." (Tr. 170-171). MH's third grade report card reflects "B" grades in reading and written expression, and a notation that she either "meets standards" or a notation that her performance fell somewhere *between* "meets" and "does not meet"

standards for every discrete subpart of the evaluated reading and writing areas (Tr. 140). In third grade MH was assessed as falling short of standards in only two subparts under Math; in many other areas she fully met standards, even earning an "A+" in spelling. (*Id.*). Her second grade teacher described her as being "very cooperative" with teachers, as a pleasant and happy girl who interacted with her peers "very well" and had "lots of friends." (Tr. 168). In addition, MH was depicted as "very kind and loving, she gives lots of hugs." (*Id.*).

In addition to relying upon school records, Plaintiff contends that the ALJ erred by failing to adequately credit the consulting examination report of psychologist Steven Fritsch, Psy.D. However, Plaintiff misconstrues the record to the extent that she asserts that Dr. Fritsch opined that MH "meets the listing of ADHD." (Doc. 8 at 8). Dr. Fritsch offered no such opinion.

Dr. Fritsch evaluated the claimant when she was seven years old, prior to her treatment for ADHD, for the purpose of confirming that suspected diagnosis. (Tr. 13). Although Dr. Fritsch opined that MH met "the criteria for [the] diagnosis of [ADHD] (primarily inattentive type)" (Tr. 199), a diagnosis alone is not the same as an opinion that an individual has met the degree of severity required for the condition to be presumed to be disabling under a Listing. *See Young v. Sec. Of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Varley v. Sec. Of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, despite diagnosing MH with ADHD, Dr. Fritsch assigned MH a global assessment functioning ("GAF") score of 55, indicting only "moderate" symptoms. (Tr. 13, citing Tr. 199). Therefore, not only is Dr. Fritsch's report silent on the issue of whether MH met or equaled the ADHD Listing, but his assessment of "moderate" symptoms and other

portions of his report supports the opposite conclusion - that MH's symptoms were not of such severity as to meet or equal the Listing.

The only three medical sources who offered an opinion on whether MH met or equaled the ADHD Listing all opined that she did not. In September 2006, reviewing consultants, Malika Haque, M.D. and Carl Tishler, Ph.D., assessed MH's functional limitations and determined that they did not meet, medically equal, or functionally equal any listing. (Tr. 204-209). A third psychological consultant, Leslie Rudy, Ph.D., reviewed the assessment of Drs. Haque and Tishler and concurred in the conclusion that MH did not meet or equal any Listing. (Tr. 224).

The remaining evidence in support of a finding that MH met or equaled the Listing comes from Plaintiff's own testimony. Plaintiff argues that, based upon that testimony, the ALJ should have found that MH has "marked" impairments in attention, impulsiveness, and hyperactivity sufficient to satisfy Part A, and additional limitations sufficient to satisfy Part B of the ADHD Listing. However, in reviewing the record as a whole, the ALJ did not find credible Plaintiff's testimony to the extent that it was inconsistent with other evidence of record (including at times, other testimony and written statements by Plaintiff). As discussed at greater length below, the ALJ's credibility determination in this regard is supported by substantial evidence.

### 2. Evidence That Limitations Are Functionally Equal to Listing

Although Plaintiff primarily argues that MH's ADHD met or equaled the relevant Listing, her argument is construed in the alternative as advocating that MH has an impairment that functionally equals the ADHD Listing. To determine functional equivalence, the Commissioner is required to assess the claimant's functioning in six domains: (1)

acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). (Tr. 11). To prove that MH has an impairment that is functionally equivalent to the ADHD Listing, Plaintiff must show that MH's impairments resulted in "marked" limitations in at least two of the referenced domains. 20 C.F.R. §416.926a(d).[2] (Tr. 11). Conversely, this Court will uphold the Commissioner's decision if it finds substantial evidence in the record to support the ALJ's determination that MH did not have "marked" limitations in two or more domains.

In this case the ALJ determined that MH had "less than marked" limitations in five out of the six relevant functional domains. In the sixth area - the ability to care for herself - the ALJ determined that MH had no limitation at all. I conclude that substantial evidence supports the ALJ's findings with reference to each of the relevant domains.

In contrast to the ALJ's findings, Plaintiff suggests that MH's impairments were functionally equivalent to the ADHD Listing because she had "marked" limitations in four of six functional domains. Plaintiff asserts that MH had impairments in cognitive functioning (construed here as the domain of acquiring and using information), in concentration (attending and completing tasks), in social functioning (construed as the domain of interacting and relating to others),[3] and in personal functioning (construed as self-care).

---

[2] Functional equivalence may also be demonstrated if a claimant's limitations are "extreme" in at least one domain, but in this case Plaintiff makes no argument that MH's limitations fall into the "extreme" category in any domain. The extreme category is reserved for the worst limitations, when a child's impairment interferes "very seriously" with her ability to initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3).

[3] Plaintiff focuses on the ADHD Listing domains of cognitive functioning, social functioning, personal functioning, and concentration, persistence and pace. Because there is significant overlap between those areas and the areas to be examined when reviewing functional equivalence, the Court has construed Plaintiff's evidentiary arguments as applicable to both areas.

In support, Plaintiff relies on the evidence previously discussed: school records, medical consulting reports, and the testimony of Plaintiff.

Just as substantial evidence supports the ALJ's determination that MH did not meet or equal the ADHD Listing, so too substantial evidence supports the ALJ's determination that MH's ADHD was not functionally equal to the Listing, because her limitations in the referenced domain areas are "less than marked."

Consultants Drs. Haque and Tishler concluded that MH had no limitations at all in the domains of acquiring and using information, in moving about and manipulating objects, or in caring for herself. (Tr. 206-207). They also concluded that MH had "less than marked" limitations in the remaining three functional domains: attending and completing tasks, interacting and relating with others, and health and physical well-being. (*Id*.). Dr. Rudy reviewed MH's records and came to the same conclusion. (*See* Tr. 204-209, 224). Dr. Rudy additionally noted that MH's treating pediatrician increased her ADHD medication in December 2006 after Plaintiff complained of "worsening" symptoms, and reported in January 2007 that there was a "good response to increased medication with decreased irritability." (Tr. 224). Thus, the ALJ reasonably concluded that MH's ADHD symptoms are "effectively controlled with the use of prescribed medication and that the claimant's condition is much improved." (Tr. 14-15).

Contrary to the three medical consultants, the ALJ found that MH had some limitation in her ability to acquire and use information based on the record as a whole, but he determined the severity of that impairment to be "less than marked." While taking note of Dr. Fritsch's report that MH's ability to master age-appropriate material was impeded by her inattentiveness, the ALJ also noted Dr. Fritsch's report that MH tested in the average

range for intellectual ability, perceptual reasoning, and working memory. (Tr. 199). The records of MH's treating pediatrician generally support the ALJ's conclusion, (Tr. 15), that MH's functioning improved through treatment of her ADHD. (*See, e.g.,* Tr. 228, ADD "doing much better," with "dramatic improvement" on medication; Tr. 230-232, three ADHD check-up reports that MH is "doing well" with no side effects on medication; Tr. 234 report that medication is "working well;" Tr. 236 report of improvement in grades, with less fidgeting). Thus, the ALJ did not err in finding that, despite some school records showing performance below grade level, improvements attributable to special education services and prescribed medication, MH does not have "marked" limitations in her ability to acquire and use information.

Assessment of the functional domain of attending and completing tasks may be particularly relevant for an individual with ADHD. Although Plaintiff relies on Dr. Fritsch's report to support her assertion that MH's limitations were "marked," Dr. Fritsch's report does not entirely support that conclusion, as previously discussed, insofar as he noted functional impairment at a "moderate" level prior to treatment. School records on the whole support the ALJ's conclusion that MH had "less than marked" limitations, particularly after treatment with medication and school interventions.

Plaintiff also argues that MH's limitations in the domain of interacting and relating with others are "marked" based upon evidence that she fights with her sibling, relatives and peers (Tr. 31). Plaintiff points to her testimony that MH had frequent conflicts and fights with friends, her sister, and cousins, and that she has aggressive and inappropriate behavior at home including ripping the heads off her dolls, cutting her own hair, smearing fecal material, digging into her skin until she bleeds, wetting the bed, screaming and

13

making dog sounds, and exhibiting obsessive compulsive behaviors. Plaintiff testified that MH also has difficulties sleeping, with nightmares 2-3 times per week. (Tr. 37-40).

Once again, however, contrary substantial evidence supports the ALJ's determination that MH's limitations were less than marked in terms of the complete picture of her social functioning. Even Dr. Fritsch described MH as cooperative, pleasant, friendly, and responsive. (Tr. 15, 19, 198-199). Although Dr. Fritsch noted her articulation to be somewhat unclear, he found her language and conversational skills to be age appropriate. In March 2007, MH's teacher stated that MH was "very cooperative" with teachers, interacted "very well" with her peers, and had "lots of friends." (Tr. 168). The teacher further reported that MH "tends to blend in, watch others to see how it's done, then tries to do the project." MH was "very kind and loving, she gives lots of hugs. (Tr. 168). In light of the substantial evidence to support the ALJ's determination, Plaintiff demonstrates no reversible error.

The fourth domain in which Plaintiff argues that MH has "marked" limitations is the area of "personal functioning." In terms of functional equivalence, this argument is construed as pertaining to the domain of self-care, or "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. §416.926a(k). Again, Plaintiff points to her testimony that MH continues to wet the bed, smears fecal material, has obsessive-compulsive behaviors, gets easily frustrated, and overreacts. She requires assistance in finding things that match and will throw her brush and yank out handfuls of hair. (Tr. 24, 32). Again, however, there is contrary

14

evidence to support the ALJ's findings. When not applying for disability, Plaintiff reported to Dr. Fritsch that MH "has age appropriate self-care skills," in that she is able to "independently dress, fix her hair and brush her teeth." (Tr. 199). Additional evidence, including the reports of three state consultants, strongly supported the ALJ's conclusion that MH does not have "marked" limitations in the area of self-care. *See Kelly v. Comm'r of Soc. Sec.*, 317 Fed. Appx. 827, 834, 2009 WL 233266 (6th Cir. 2009)(testimony that child unable to properly bathe, gets shoes mixed up, and dawdles when he supposed to be doing chores does not demonstrate "marked" limitations in self-care due to ADHD, given countervailing evidence that he feeds himself, changes clothes, and toilets without help).

### 3. Credibility

Although not separately listed as a statement of error, many if not most of Plaintiff's complaints implicitly challenge the ALJ's assessment of Plaintiff's credibility. A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the

claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

The ALJ found that the evidence that supported a degree of severity amounting to disability was "not supported by substantial evidence and cannot be accepted as credible." (Tr. 14). Most of that evidence came from Plaintiff's testimony, in her role as MH's custodial grandmother. However, throughout his report, the ALJ pointed out that Plaintiff's testimony was internally inconsistent, was inconsistent with some of Plaintiff's own prior reports, and was inconsistent with other evidence in the record.

For example, Plaintiff reported both that MH was unable to jump rope, and that she could jump rope (Tr. 15). Plaintiff stated that MH is not able to walk a block because she loses her balance, but all school records reported that MH has adequate fine motor skills, coordination and balance, including a report from her physical education teacher. (Tr. 20). Plaintiff stated that MH has been disciplined in class, but also that "teachers and students generally love her." (Tr. 15). Plaintiff reported that MH has difficulties with reading, spelling and math, but many school records demonstrated adequate cognitive functioning and Plaintiff herself testified that MH had learned to multiply with the help of a "chit sheet." (Tr. 16). Plaintiff testified that MH's vision difficulties are only partially corrected with glasses, but testing demonstrated that MH has normal vision with glasses. (Tr. 16). Plaintiff testified that MH requires prompting to stay on task, can read for less than five minute and can watch television for only ten to fifteen minute. However, Plaintiff also testified that MH "helps with household chores such as picking up toys, making her bed, and setting up trays for meals." (Tr. 18). In addition, on one occasion Plaintiff indicated that MH can watch

television "for hours." (*Id.*). Although Plaintiff reported frequent fighting, teachers reported that MH is typically happy and cooperative, with many friends, and Plaintiff also reported that MH plays with her sister, cousins and friends. (Tr. 19). Although Plaintiff testified that MH's asthma requires frequent treatment with symptoms exacerbated by physical activity, all evidence including medical evidence and reports from MH's physical education teacher suggested that MH's asthma was "quite mild" and "just barely classifiable as severe for Social Security [purposes]." (Tr. 22-23). All of these inconsistencies constitute substantial evidence to uphold the ALJ's credibility determination in this case.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

　　　　　　　　　　　　　　　　　　　　 */s Stephanie K. Bowman*　　　
　　　　　　　　　　　　　　　　　　　　Stephanie K. Bowman
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| NADINE GUTHRIE, as Legal Guardian and Grandmother of minor child, MH, | Case No. 1:10-cv-858 |
| Plaintiff, | Spiegel, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).